**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | |
|---|---|
| KEVIN D. SAMPSON, JR.<br><br>Plaintiff,<br><br>v.<br><br>THOMAS J. DART, as Sheriff of Cook County, Illinois, et al.,<br><br>Defendants. | Case No. 1:25-cv-00020<br><br>Honorable Judge Andrea R. Wood |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Correctional Sergeant Timothy Skinner, Deputy Sheriff Paul Wlodyga, and Correctional Officer Keith Gomillia, in their individual capacities, and Sheriff Thomas J. Dart, in his official capacity (collectively, the " CCSO Defendants"), by and through their attorney, Cook County State's Attorney Eileen O'Neill Burke, through her assistant Emily Stewart, move to dismiss Plaintiff's complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support, thereof, Defendants state as follows:

**INTRODUCTION**

On February 18, 2026, Plaintiff Kevin Sampson filed his four-count operative complaint against Defendants for compensatory and punitive damages. Plaintiff brings two counts against each of the individually named defendants, *i.e.*, Skinner, Wlodyga, Gomillia, Franco[1] and Field, alleging that they violated his Fourteenth Amendment rights when they 1) subjected him to inhumane conditions of confinement (Count I); and 2) failed to protect him from potential self-

[1] Defendant Franco is currently unrepresented, and Defendant Field and Cook County are represented by the Cook County State's Attorney's Conflicts Unit.

destructive behavior (Count II). Plaintiff also brings a *Monell* claim against Cook County and Sheriff Dart (Count III) alleging that Plaintiff's constitutional rights were violated because they do not have a "policy for inmates during a criminal investigation involving suicide at the Cook County Jail [that] take[s] into consideration inmates like Plaintiff who have a long and well documented history of mental illness, suicidal ideations, and attempted suicides." Plaintiff's fourth and final claim is an indemnification claim against Cook County (Count IV).

Plaintiff's claims against CCSO Defendants, and unrepresented defendant Franco, should be dismissed in their entirety for the following reasons. First, as Plaintiff only alleges mental and emotional injuries, his compensatory damages claims are barred under the Prison Litigation Reform Act, 42 U.S.C. § 1997e et seq. ("PLRA"). Second, it is well established that punitive damages claims against governmental entities, *e.g.,* Sheriff Dart in his official capacity, for Section 1983 violations are barred. Third, Plaintiff's claims against Officer Gomillia are time-barred. Fourth, Plaintiff fails to plead a *Monell* claim against Sheriff Dart. Fifth, Plaintiff fails to plead a Section 1983 claim against Officers Skinner, Wlodyga, Gomillia and Franco. Sixth, Officers Skinner, Wlodyga, and Gomillia are shielded from liability here based on the doctrine of qualified immunity. Seventh, Plaintiff is not entitled to punitive damages against the individually named defendants. For all these reasons, as further discussed below, Defendants request that Plaintiff's complaint be dismissed in its entirety against all CCSO Defendants with prejudice.

## FACTUAL ALLEGATIONS[2]

Plaintiff is a detainee with a documented history of mental illness, including suicidal ideation and attempted suicide. Am. Compl. ¶ 10. On or about November 16, 2022, Plaintiff

[2] These factual allegations are presumed true solely for the purposes of this motion to dismiss.

was awakened by another detainee around 2 a.m. and informed that his friend who he knew as "Bob" had committed suicide in the shower area. *Id.* ¶ 11. Plaintiff then went to the shower area and found Bob hanging from his neck and unresponsive. *Id.* Detainees subsequently alerted Officer Gomillia to the problem and he came to investigate the situation and found Bob's body. *Id.* ¶¶ 13-14. Officer Gomillia then relocated all the detainees on the tier where Bob's body was found to another tier. *Id.* ¶ 14.

**<u>Plaintiff's Interactions With Officer Franco</u>**

Once he was removed to another tier, Plaintiff asked Officer Franco for a psychological evaluation "because, in light of his own multiple suicide attempts and history of mental illness, he was traumatized by his friend Bob's suicide[.]" *Id.* ¶ 15. Officer Franco responded, "while laughing, that Plaintiff would eventually get the requested evaluation, but that Plaintiff would need to "hang around" in the meantime." *Id.* These are the only factual allegations relevant to Plaintiff's claims against Officer Franco. *See generally id.*

**<u>Plaintiff's Interactions With Officer Gomillia</u>**

Several hours after Plaintiff saw Bob's hanging body, but before receiving a psychological evaluation, Officer Gomillia forced Plaintiff and other detainees to clean up the shower area where Bob's body was found. *Id.* ¶ 16. "This involved, for example, cleaning up and disposing of his Bob's shower shoes, cutting down the sheet Bob used to hang himself, and rinsing the shower area of Bob's bodily fluids and other remnants." *Id.* These are the only factual allegations that are relevant to Plaintiff's Section 1983 claims against Officer Gomillia. *See id.* ¶¶ 13-14, 16.

**<u>Plaintiff's Interactions With Julie Field</u>**

Plaintiff was later transported to Cermak Hospital for a psychological evaluation

"during which he told the Cook County jail's mental [health] advisor Defendant Julie L. Field that he was experiencing a panic attack and mental breakdown due to having to remain living on Tier 4 after witnessing his friend Bob's hanged body[.]" *Id.* ¶ 17. Plaintiff asked Field to re-assign him to another tier, "because given his history with suicide attempts and mental health issues, he feared remaining in the same Tier where he had to see his friend's hanged body would put him in danger of another mental breakdown or suicide attempt." *Id.* ¶ 18. Field "refused to transfer Plaintiff to another [t]ier because she informed Plaintiff that she did not have the authority to do so." *Id*. Plaintiff was later returned to the tier where Bob committed suicide, and Field never informed the "appropriate authorities at Cook County Jail" of Plaintiff's transfer request. *Id*. These are the only factual allegations that are relevant to Plaintiff's Section 1983 claims against Mental Health Provider Julie Field. *See id*. ¶¶ 17-18.

**Plaintiff's Interactions with Sergeant Skinner**

After returning to the Cook County Department of Corrections, but before returning to the tier where Bob committed suicide, Plaintiff asked Sergeant Skinner "for a transfer to a different [t]ier given his mental health issues, his recent psychological evaluation with Defendant Julie L. Field," and his friend Bob's suicide. *Id.* ¶ 20. Sergeant Skinner refused Plaintiff's request and threatened him with solitary confinement if he did not return to the tier where Bob committed suicide. *Id*. These are the only factual allegations that are relevant to Plaintiff's Section 1983 claims against Sergeant Skinner. *See id*.

**Plaintiff's Interactions with Officer Wlodyga**

Soon after Sergeant Skinner refused Plaintiff's request to transfer to a different tier, Plaintiff asked Officer Wlodyga for a further psychological evaluation, but was ignored. *Id.* ¶ 21. These are the only factual allegations that are relevant to Plaintiff's Section 1983 claims

against Officer Wlodyga. *See generally, id.*

**Sheriff Dart's or Cook County's Policies**

Plaintiff alleges that Field, Wlodyga, Skinner, Gomillia and Franco's conduct was "undertaken pursuant to an official policy adopted, promulgated, and/or maintained by Defendant Sheriff Dart and Defendant Cook County." *Id.* ¶¶ 59, 61. Plaintiff describes such official policy as the failure to adopt a policy "for inmates during a criminal investigation involving suicide at Cook County Jail … that take[s] into consideration inmates like Plaintiff who have a long and well documented history of mental illness, suicidal ideations, and attempted suicides." *Id.* ¶¶ 59-60.

**Plaintiff's Damages**

Plaintiff alleges no physical injury based on Defendants alleged conduct; he seeks compensatory damages solely for emotional distress. *See id. ¶ 23.* Plaintiff also seeks punitive damages from all defendants.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). When assessing a 12(b)(6) motion, courts must accept well-pleaded allegations as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Gutierrez v. Peters*, 111 F. 3d 1364, 1369 (7th Cir. 1997). Plaintiff's factual allegations, however, must plausibly suggest that the plaintiff is entitled to relief, "raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement for relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Indeed, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [the] presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). Furthermore, a court is not "required to ignore any facts set forth in the complaint that undermine the plaintiff's claim[.]" *City Nat'l Bank of Florida v. Checkers, Simon & Rosner*, 32 F.3d 277, 281 (7th Cir. 1994) (internal quotation marks omitted).

## ARGUMENT

### A. Plaintiff's 42 U.S.C. § 1983 claims for mental and emotional injury fail as a matter of law.

Plaintiff's Section 1983 claims (Counts I-III) are barred under the PLRA. Subsection (e) of the PLRA provides as follows:

> ***No federal civil action may be brought*** by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18, United States Code).

42 U.S.C. § 1997e(e) (emphasis added). Hence, detainees within CCDOC custody are barred from bringing federal civil actions, including for Section 1983 claims, for mental and emotional injury unless they can show that such mental and emotional injury was preceded by a physical injury. *Id*; *see also Zehner v. Trigg,* 133 F.3d 459, 461-62 (prisoner precluded from recovering compensatory damages for mental and emotional harm where prisoner failed to make showing of physical injury); *Hacker v. Dart*, 62 F.4th 1073, 1085-86 (7th Cir. 2023) (same).

As Plaintiff here does not allege that he suffered any physical injury, only mental and emotional injuries, *see* Am. Compl. ¶ 23, his compensatory damages claims are barred under the PLRA. *See Zehner*, 133 F.3d 459, 461-62; *Hacker*, 62 F.4th 1073, 1085-86. Thus, CCSO Defendants request that Plaintiff's compensatory damages claims against them be dismissed with prejudice.

**B. Plaintiff's punitive damages claims against Sheriff Dart, in his official capacity, fail as a matter of law.**

Plaintiff's punitive damages claim against Sheriff Dart fails. Plaintiff's Section 1983 claim against Sheriff Dart, in his official capacity, is equivalent to a *Monell* claim against the governmental entity to which he belongs, the Cook County Sheriff's Office ("CCSO"). *See Guzman v. Sheahan*, 495 F. 3d 852, 859 (7th Cir. 2007) (a claim against a government official, in his official capacity, is effectively a claim against the government entity to which the official belongs). It is well established that plaintiffs are barred from seeking punitive damages from local governmental entities for alleged *Monell* violations. *See City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981) ("considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials. . . . we hold that a municipality is immune from punitive damages under 42 U. S. C. § 1983"). Thus, to the extent that Plaintiff is seeking punitive damages from Sheriff Dart, in his official capacity, such claims should be dismissed with prejudice.

**C. Plaintiff's Section 1983 claims against Officer Gomillia are time-barred.**

Plaintiff's Section 1983 claims against Officer Gomillia are time-barred. Plaintiff's Section 1983 claims are governed by the forum state's, *i.e.*, Illinois', personal injury statute of limitations. *Ashafa v. City of Chi.*, 146 F.3d 459, 461 (7th Cir. 1998). In Illinois, personal injury actions are subject to a two-year statute of limitations. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). Accordingly, Plaintiff's Section 1983 claims are subject to a two-year limitations period and began to "accrue when the plaintiff kn[ew] or should [have known] that his or her constitutional rights have been violated." *Id.* (internal quotation marks omitted). Further, the statute is not tolled by filing a complaint and attributing the alleged unlawful conduct to a Jane or John Doe defendant. *See* Fed. R. Civ. P. 15(c); *Herrera v. Cleveland*, 8 F.4th 493, 499 (7th Cir.

2021); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998); *Terry v. Chi. Police Dep't*, 200 F. Supp. 3d 719, 723 (N.D. Ill. 2016).

Here, Plaintiff alleges that Officer Gomillia violated his constitutional rights on November 17, 2022 when he forced him to clean the shower area where his friend committed suicide. *See* Am. Compl. ¶¶ 13-16. Hence, the two-year statutory period began to run on November 17, 2022. Despite this fact, Plaintiff did not file an amended complaint naming Officer Gomillia until February 18, 2026. *Compare* Am. Compl. (Dkt. No. 44), with Compl. (Dkt. No. 16). Thus, Plaintiff's claims against Officer Gomillia are time-barred and should be dismissed with prejudice.

**D. Plaintiff's *Monell* claim fails.**

Plaintiff fails to plead a *Monell* claim against Sheriff Dart. Plaintiff's Section 1983 claim against Sheriff Dart, in his official capacity, is a claim against CCSO. *See supra*, at 6. Under Section 1983, a municipal entity may only be held liable for its own unlawful conduct; it may not be held liable under a theory of respondeat superior liability. *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675-676 (7th Cir. 2022). "Accordingly, a plaintiff can prevail on a *Monell* claim for municipal liability ***only*** when challenging the execution of a government's policy or custom[.]" *Id* at 675 (cleaned up, emphasis added). To plead a claim under *Monell*, a plaintiff must allege facts plausibly suggesting that his alleged constitutional injury was caused by one of the following: 1) an express municipal policy; 2) widespread municipal practice or custom; or 3) a person with final policymaking authority. *See id.; Twombly*, 550 U.S. at 555. Further, while [i]naction can also give rise to liability[, it can only do so] if it reflects the municipality's conscious decision not to take action. *Bohanon*, 46 F.4th at 675.

Plaintiff here proceeds under the first prong of *Monell*.[3] *See* Am. Comp. ¶¶ 58-62. To satisfy his pleading burden here, he must allege facts demonstrating that: 1) the gap in policy at issue – the failure to take into consideration detainees with "a long and well documented history of mental illness, suicidal ideations, and attempted suicides" after another detainee commits suicide – was the moving force behind Plaintiff's alleged constitutional deprivation; and 2) CCSO had notice that its policy gap caused multiple constitutional violations and was deliberately indifferent to that risk; or 3) the risk of a constitutional deprivation based on CCSO's policy gap was so high as to be obvious. *Bohanon*, 46 F.4th at 675-76; *see also J.K.J. v. Polk County*, 960 F.3d 367, 380 (7th Cir. 2020).

Plaintiff is unable to meet his pleading burden for the following reasons. First, it is unreasonable to infer that the above described gap in CCSO policy was the moving force behind the diverse and varied conduct (from distasteful jokes to ignoring requests for medical evaluations) at issue in Plaintiff's complaint. Second, as Plaintiff's complaint is based solely on his interactions with individuals shortly after Bob committed suicide, Plaintiff fails to allege facts showing that CCSO had notice of multiple instances of alleged unconstitutional conduct caused by its policy gap. *See Taylor v. Hughes*, 26 F.4th 419, 435 (7th Cir. 2022) ("This heightened evidentiary burden helps ensure that there is a true municipal policy at issue, not a random event, to comport with *Monell's* holding that a municipality cannot be held liable under § 1983 on a respondeat superior theory" (cleaned up)); *Caldwell v. Elwood*, 959 F.2d 670, 673 (7th Cir. 1992). Third, it is not blatantly obvious that CCSO's failure to implement the above vague policy would result in the complained of constitutional violations. *See generally* Am. Compl. ¶¶

---

[3] CCSO Defendants presume that Plaintiff is bringing his claim under the first prong as he fails to 1) describe a custom or practice; or 2) identify a person with final policymaking authority who personally participated or was personally aware of the circumstances at issue in his complaint. However, even if he later attempts to argue that his allegations satisfy the custom and practice prong of Monell, he fails to allege facts sufficient to find that CCSO was on notice that the custom or practice led to or was likely to lead to a constitutional deprivation.

10-23, 58-62 (emphasis added). For all the above reasons, Plaintiff fails to meet his pleading burden and CCSO Defendants request that Plaintiff's Monell claim against Sheriff Dart be dismissed with prejudice.

**E. Plaintiff's Section 1983 claims against Officers Skinner, Wlodyga, Gomillia and Franco fail.**

Plaintiff's Section 1983 claims fail as a matter of law. Plaintiff was a pretrial detainee at all relevant times herein. Thus, his Section 1983 conditions and failure to protect claims arise under the Fourteenth Amendment objective reasonableness standard. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015); *Miranda v. Cty. of Lake*, 900 F.3d 335, 350-351 (7th Cir. 2018). To state a claim for inadequate conditions of confinement or failure to protect under the Fourteenth Amendment, a pretrial detainee must allege that: 1) he was at substantial risk of suffering serious harm; 2) defendant's conduct in response was objectively unreasonable under the circumstances; and 3) defendant's conduct caused Plaintiff's injuries. *Thomas*, 39 F.4th at 841; *Gonzalez v. McHenry County*, 40 F.4th 824, 828 (7th Cir. 2022) (to establish liability plaintiff must prove that defendant caused the deprivation at issue); *Suri v. Dart*, No. 25 cv 3955, 2026 U.S. Dist. LEXIS 7185, at *15-16 (N.D. Ill. Jan. 14, 2026).

Here, however, Plaintiff fails to meet his pleading burden for the following reasons. First, Plaintiff does not allege specific facts that that would allow a reasonable person to infer that he was at substantial risk of suffering an objectively serious harm as he never communicated that he was planning to commit suicide or hurt himself. *See* Am. Compl. ¶ 23 (Plaintiff's conditions of confinement caused him severe and continuing emotional distress); *Pittman v. County of Madison*, 746 F.3d 766, 777 (7th Cir. 2014) (imminent possibility of suicide rises to the level of an objectively serious harm); *Miller v. Winnebago County Sheriff's Office*, No. 18 C 50334, 2019 U.S. Dist. LEXIS 6189, at *6 (N.D. Ill. Jan. 14, 2019)("Punishment in the

constitutional sense generally requires allegations of extreme deprivations over an extended time"). Second, Plaintiff does not allege that Officers Wlodyga, Skinner, Gomillia and Franco's conduct caused any objectively serious harm. *See supra*, at 9.

Third, Officers' Wlodyga, Skinner, Gomillia and Franco's actions were objectively reasonable under the circumstances. Courts evaluate "the facts and circumstances of each particular case . . . from the perspective of a reasonable officer on the scene, including what the officer knew at the time." *Thomas,* 39 F.4th at 842 (cleaned up). Relevant facts and circumstances include "the legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained, [and defer to] policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Johnson v. Dart*, No. 20-cv-06500, 2025 U.S. Dist. LEXIS 60471, at *19 (N.D. Ill. Mar. 31, 2025) (internal quotation marks omitted).

Based on the specific facts alleged in Plaintiff's complaint,[4] it is unreasonable to infer that Officer Gomillia had any knowledge of Plaintiff's mental health history or the status of his mental health before he allegedly forced Plaintiff and other detainees to clean up the shower area where Bob committed suicide. *See* Am. Compl. at 16. Hence, Officer Gomillia's decision to require plaintiff and other detainees to clean up the shower area where Bob committed suicide was objectively reasonable under the circumstances, and in furtherance of legitimate government interest, *i.e.*, a clean tier.

Officers Wlodyga and Franco's alleged responses to Plaintiff's requests for a psychological evaluation were also reasonable as such requests would not put a reasonable

[4] Although Plaintiff generally alleges that all defendants were aware of his mental health history, including prior suicide attempts, he offers no specific factual allegations to support that claim. Further, in accord with *McCauley v. City of Chi.,* 671 F.3d 611, 616 (7th Cir. 2011), such conclusory allegations are not entitled to the presumption of truth.

person on notice that Plaintiff was at substantial risk of suffering a serious harm. *See Pittman v. County of Madison*, 746 F.3d 766, 777 (7th Cir. 2014) ("a prisoner's mere request to see a psychiatric crisis counselor does not, standing alone, put a prison officer on notice of the imminent possibility of suicide"); Am. Compl. ¶¶ 15, 21. Officer Skinner's alleged actions were also reasonable as he knew that Plaintiff had just been medically cleared to return to his tier after a psychological evaluation, and it is well-settled that a correctional officer is justified in relying on the judgment of a medical professional under the circumstances. *See* Am. Compl. ¶ 20. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor"). For these reasons, Officers Skinner, Wlodyga, Franco and Gomillia's actions were reasonable under the circumstances, Plaintiff's Section 1983 claims against them fail and should be dismissed with prejudice.

**F. Officers Skinner, Wlodyga, and Gomillia are shielded from liability under the doctrine of qualified immunity.**

Defendants are shielded from liability pursuant to the doctrine of qualified immunity. To overcome a qualified immunity defense here, Plaintiff must, among other things, demonstrate that his constitutional right that was violated was clearly established, such that every reasonable public official would have known that his conduct was unlawful. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). The "clearly established standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring

that officials can reasonably anticipate when their conduct may give rise to liability for damages." *Id*.

Plaintiff must show that the constitutional right allegedly violated was clearly established "in a particularized sense, rather than at a high level of generality," at the time of the violation. *Alicea v. Thomas*, 815 F.3d 283, 291 (7th Cir. 2016). Hence, the proper question for the court is "whether the right at issue was clearly established at the time and *under the circumstances presented*." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (emphasis added). To meet this high burden, Plaintiff must either point to closely analogous case law demonstrating that the right is clearly established or prove that the right is "so clear…that no one thought it worthwhile to litigate the issue." *Dunn v. City of Elgin*, 347 F.3d 641, 650 (7th Cir. 2003) (internal quotation marks omitted). Further, courts should resolve questions of qualified immunity at the earliest possible stage of litigation, including the pleading stage, if appropriate. *See Doe v. Village of Arlington Heights*, 782 F.3d 911, 915-16 (7th Cir. 2015); *see also Chasensky v. Walker*, 740 F.3d 1088, 1095-97 (7th Cir. 2014) (reversing denial of motion to dismiss on qualified immunity grounds); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007) (same).

In order for Plaintiff to defeat Officers Skinner, Wlodyga and/or Gomillia's claims of qualified immunity, respectively, he must show that a detainee 1) with a history or mental illness, who had just undergone a psychological evaluation and was medically cleared to return to the tier where his friend committed suicide, has a clearly established constitutional right to be *immediately* transferred to another tier upon request; 2) who requests a further psychological evaluation on a tier where someone committed suicide has a clearly established constitutional right to be immediately seen by medical personnel; and 3) has a clearly established constitutional right not to be forced to clean an area within his detention facility where someone committed suicide.

As Plaintiff is unable to clearly establish the above constitutional rights exist, Defendants Skinner, Wlodyga[5] and Gomillia are shielded from liability here pursuant the doctrine of qualified immunity, and the claims against them should be dismissed with prejudice.

### G. Plaintiff's punitive damages claims against Officers Skinner, Wlodyga, and Gomillia fail.

Plaintiff's punitive damages claims against Officers Gomillia, Wlodyga, and Skinner fail as a matter of law. Punitive or exemplary damages may be awarded in Section 1983 cases where defendant's conduct was "motivated by evil intent or callous indifference to [ ] federally protected constitutional rights." *Stachniak v. Hayes*, 989 F.2d 914, 928 (7th Cir. 1993). As Plaintiff's allegations here against Officers Gomillia, Skinner and Wlodyga fail for the reasons stated herein, *see supra* at 1-12, Plaintiff's punitive damages claims should be dismissed with prejudice.

## CONCLUSION

WHEREFORE, CCSO Defendants request that their motion dismiss Plaintiff's amended complaint against them be GRANTED. CCSO Defendants further request any other relief that the Court deems just and appropriate.

DATED: August 3, 2026

Respectfully submitted,

EILEEN O'NEILL BURKE
State's Attorney of Cook County

By: */s/ Emily Stewart*
Emily Stewart
Assistant State's Attorney
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
Telephone: (312) 603-3014
Emily.Stewart2@cookcountysao.org

[5] While CCSO Defendants do not assert an affirmative defense on behalf of Officer Franco, Plaintiff cannot establish that he has a clearly established constitutional right to remain free from crude and highly inappropriate jokes after a suicide. Thus, if asserted, the doctrine of qualified immunity should also shield Officer Franco from liability.