**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Sampson, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 25-cv-00020 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| Skinner, et al., | ) | |
| | ) | Magistrate Judge Young B. Kim |
| Defendants. | ) | |

## COOK COUNTY DEFENDANTS' MOTION TO DISMISS

Defendants Cook County and Julie L. Field (collectively, "Cook County Defendants"), through their counsel, Eileen O'Neill Burke, State's Attorney of Cook County, through her Assistant State's Attorney, Jessica D. Ratner, respectfully move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). In support, the Cook County Defendants state:

## INTRODUCTION

Plaintiff, Kevin Sampson, Jr. ("Plaintiff"), a detainee in custody of the Cook County Department of Corrections ("CCDOC"), brought this lawsuit against the Cook County Sheriff, four individual correctional officers, Cook County, and Cook County mental health specialist Julie Field ("Defendant Field"). Plaintiff alleges that defendants violated his constitutional rights when they did not immediately transfer him to another tier after one of his tier-mates committed suicide.

As to the Cook County Defendants, the operative Amended Complaint is devoid of any allegations which plausibly suggest any unconstitutional conduct or wrongdoing. Further, many of the allegations directed at the Cook County Defendants are not well-pled at all, as Plaintiff conflates the authority of the Cook County Sheriff ("Defendant Dart') and his correctional staff

with that of Cook County and its medical staff. Moreover, Plaintiff fails to allege that he suffered physical injury, as required by the Prison Litigation Reform Act ("PLRA"). Finally, Plaintiff's untimely claims against the Cook County Defendants are barred by the statute of limitations.

Accordingly, Plaintiff fails to state any claims against the Cook County Defendants, who should be dismissed from this lawsuit with prejudice.

**STATEMENT OF FACTS[1]**

Unless otherwise specified, the following events occurred between November 16-18, 2022. Around 2 a.m. on November 16, 2022, Plaintiff and other detainees housed within Tier 4[2] discovered that their tier-mate, Bob, had committed suicide by hanging himself in the shower area of the tier. Dkt. 44, ¶ 11. Plaintiff and his tier-mates notified correctional staff, who investigated the incident. *Id*. ¶ 14. Plaintiff, who was traumatized, made a request to a correctional officer for a psychological evaluation. *Id*., ¶ 15. Prior to receiving an evaluation, correctional staff ordered Plaintiff and other detainees to clean the Tier 4 shower area, which included disposing of Bob's shower shoes, cutting down the sheet Bob used to hang himself, and rinsing the area of Bob's bodily fluids. *Id*., ¶ 16.

At some point within the next two days, Plaintiff was transported to Cermak, where he received a psychological evaluation from Defendant Field, a mental health specialist employed by Cook County. *Id*., ¶ 18. During the evaluation, Plaintiff informed Defendant Field that he feared remaining on the tier would put him at risk of another mental breakdown or suicide attempt and requested a tier transfer. *Id*., ¶ 18. Defendant Field responded by informing Plaintiff that she did not have authority over Plaintiff's housing assignment. *Id*.

[1] The factual background for this Motion to Dismiss is taken from Plaintiff's Amended Complaint and is presumed true only for purposes of this Motion. While Plaintiff's Complaint includes numerous allegations against many defendants, this background focuses on the allegations against Cook County and Julie Field.
[2] In his Amended Complaint, Plaintiff does not identify the division within which Tier 4 was located.

Upon returning from his psychiatric evaluation, Plaintiff requested a tier transfer from correctional staff, who forced Plaintiff to return to Tier 4 and threatened him with solitary confinement. *Id.*, ¶ 20. Thereafter, Plaintiff made a request to correctional staff for another psychological evaluation but his request was ignored. *Id.*, ¶ 21. Plaintiff remained in Tier 4 for several weeks, during which time he continued to experience mental distress. *Id.*, ¶ 23.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

The purpose of the federal pleading standard is to provide a defendant with "fair notice" of the claim and the basis for relief. *Tamayo v. Blagojevich*, 526 F. 3d 1074, 1081 (7th Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). To meet the requirements of "fair notice," a complaint must provide "the operative facts upon which a plaintiff bases his claim." *Kyle v. Morton High Sch.*, 144 F.3d 448, 455 (7th Cir. 1998).

## ARGUMENT

### I. Plaintiff's complaint should be dismissed in its entirety because he does not allege any physical injury.

Section 1997e(e) of the PLRA provides as follows:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18, United States Code).

42 U.S.C. § 1997e(e). Plaintiff was, at all relevant times and at the date of filing, a prisoner confined in a jail, prison, or other correctional facility. Dkt. 44, ¶ 3. In the Amended Complaint, Plaintiff does not allege that he suffered any physical injury. At most, he vaguely states that he suffered emotional distress, pain, suffering, and injury. *Id*., ¶23, 32, 42, 48, 52, 54, 56-47, 62, 66. Moreover, the *only* specific example that Plaintiff provided is that he experienced emotional distress from being forced to live in the same Tier where his tier-mate committed suicide and from being forced to clean the shower area of that Tier. *Id*.

Because Plaintiff cannot show that he suffered physical injury as a result of *any* of the Defendants' conduct, Plaintiff cannot seek compensatory damages[3] for any alleged mental or emotional damages under Section 1997e(e) of the PLRA. *See* 42 U.S.C. § 1997e(e); *see also Calhoun v. DeTella*, 319 F.3d 940, 941 (7th Cir. 2003) ("[A]bsent a showing of physical injury, § 1997e(e) would bar a prisoner's recovery of compensatory damages for mental and emotional injury[.]"); *see also Coleman v. Dart*, No. 17 C 2460, 2019 U.S. Dist. LEXIS 25817, at *26 (N.D. Ill. Feb. 19, 2019). Therefore, Counts I (conditions of confinement), II (failure to protect), and III (*Monell* liability) should be dismissed in their entirety. Moreover, without sufficient facts to

[3] Plaintiff does not request any type of relief other than damages and attorneys' fees and costs. Dkt. 44 at 15. Moreover, and for the reasons discussed in this motion, the Amended Complaint is entirely devoid of allegations that could plausibly support a request for any type of relief other than compensatory damages based upon Plaintiff's alleged mental and emotional injury. *See generally id*.

establish potential liability or a cause of action against any defendant, Count IV (indemnification) must also be dismissed.

## II. Plaintiff's claims against the Cook County Defendants are factually deficient.

At the outset, relevant to analyzing the claims against the Cook County Defendants is the fact that the Cook County Sheriff's Office ("CCSO") and Cook County are separate and distinct legal entities with different roles and responsibilities. Specifically, the CCSO is under the purview of Defendant Dart, who is a county officer and who is *not* in an employment relationship with Cook County. *See Moy v. Cnty. of Cook*, 159 Ill. 2d 519, 525-532 (1994); *see also Biggerstaff v. Moran*, 284 Ill. App. 3d 196, 199-200 (1st Dist. 1996).

Although Plaintiff contradicts himself by simultaneously alleging that the individual defendants were employees of both the CCSO[4] and Cook County, this Court can take judicial notice of the fact that the individual correctional officer defendants and Defendant Field have different employers. *Compare* dkt. 44 ¶¶ 4-8 *with* ¶ 64; *see also Bogie v. Rosen-berg*, 705 F.3d 603, 609 (7th Cir. 2013) (noting that district courts can consider facts set forth in the complaint that undermine the plaintiff's claim); *see also J.B. v. Woodard*, 997 F.3d 714, 717 (7th Cir. 2021) ("We can also take judicial notice of matters of public record, including court filings and documents from the ongoing state court proceedings incorporated into the federal complaint."). Specifically, the CCDOC is a department of the CCSO and, therefore, under the purview of Defendant Dart, who employs the individual correctional defendants. *See* Cook County Sheriff's Office, Departments, *available at* https://cookcountysheriffil.gov/departments. On the other hand, Defendant Field is a medical provider employed by Cook County, not the CCSO. *See Nelson v. Wygodny*, No. 24 C

[4] In his Amended Complaint, Plaintiff mistakenly notes that the individual defendants are employees of the CCDOC. The CCDOC is a *department* of the CCSO, which is the actual entity that employs CCDOC correctional officers. *See* Cook County Sheriff's Office, Departments, *available at* https://cookcountysheriffil.gov/departments.

3446, 2026 U.S. Dist. LEXIS 2362, at *6 (N.D. Ill. Jan. 7, 2026) ("Dart is not the proper *respondeat superior* defendant with regards to any employee of Cermak Health Services."); *see also Harrison v. Cty. of Cook*, No. 08 C 3202, 2011 LX 45973, at *21 (N.D. Ill. Sep. 12, 2011) ("Cook County and the Cook County Sheriff's office are separate entities with distinct responsibilities. Cook County, through Cermak, is responsible for providing medical care to detainees. Dart's office, by contrast, is responsible for operating and maintaining the CCDOC as a jail.").

**a. Plaintiff does not plead a conditions claim against Defendant Field.**

"[T]o prevail on a claim alleging unconstitutional conditions of pretrial confinement, the plaintiff must prove three elements: (1) the conditions in question are or were objectively serious (or if the claim is for inadequate medical care, his medical condition is or was objectively serious); (2) the defendant acted purposefully, knowingly, or recklessly with respect to the consequences of his actions; and (3) the defendant's actions were objectively unreasonable – that is, 'not rationally related to a legitimate governmental objective or . . . excessive in relation to that purpose.'" *See Hardeman v. Curran*, 933 F.3d 816, 827 (7th Cir. 2019) (Sykes, J., concurring) (*quoting Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

Plaintiff has failed to allege any facts in support of his claim that Defendant Field subjected him to any unconditional conditions in his pretrial confinement, much less that that she did so while acting "purposefully, knowingly, or recklessly in an objectively unreasonable manner." Dkt. 44, ¶¶ 33-34; *see McReynolds*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678) ("Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice.").

In support of his conditions claim, Plaintiff pleads alternative contradictory scenarios, neither of which are supported by well-plead facts. First, Plaintiff suggests that "[b]y *denying*

Plaintiff's request to transfer out of Tier 4," Defendant Field "*forc[ed]* Plaintiff to live on the same Tier where his friend committed suicide a few days prior." *See* Dkt. 44, ¶ 33 (emphasis added). However, Plaintiff's assertions regarding Defendant Field's conduct are undermined by the fact that during Plaintiff's psychiatric evaluation, and in response to Plaintiff's *initial request*[5] for a tier transfer, Defendant Field, in fact, *"informed Plaintiff that she did not have the authority*" to transfer Plaintiff to another tier in response to Plaintiff's initial request for a tier transfer. Dkt. 44, ¶ 18 (emphasis added); *see also Bogie*, 705 F.3d 603 at 609 (citations omitted) (Courts are free to consider "any facts set forth in the complaint that undermine the plaintiff's claim."). Furthermore, the Amended Complaint is devoid of *any* allegations that Defendant Field had such authority over Plaintiff's housing assignments. *See City Nat'l Bank of Florida v. Checkers, Simon & Rosner*, 32 F.3d 277, 281 (7th Cir. 1994) (citations omitted) (A court is not "required to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law."). Without such authority, it is not plausible that Defendant Field could have had personal involvement necessary to deny/refuse Plaintiff's request, which is the crux of his claim against her. *See Allen*, 41 F.4th 834 at 850.

Second, in the alternative, Plaintiff speculates that "even if Defendant Julie L. Field did not have the individual authority to transfer Plaintiff out of Tier 4, she should have followed the operative medical policy and directed Plaintiff's req*uest to medical personnel with* the appropriate authority to provide him with 'competent medical authority' to ensure his suicidal and mental illness." Dkt. 44, ¶ 34, *citing* 20 Ill. Adm. Code 701.90 (a)(2). However, Plaintiff's assertion that Defendant Field "did not communicate Plaintiff's request for a transfer to the appropriate

---

[5] At the time of Plaintiff's psychiatric evaluation with Defendant Field, Plaintiff had only requested a psychiatric evaluation—but had not yet requested a tier-transfer—from correctional staff. Dkt. 44, ¶¶ 15, 17. Upon returning from his psychiatric evaluation, Plaintiff made his initial request to correctional staff for a tier-transfer. *Id.*, ¶ 20.

authorities at Cook County Jail" in violation of 20 Ill. Adm. Code 701.90(a)(2) is not supported (and actually contradicted) by the authority upon which Plaintiff relies. *See* Dkt. 44, ¶¶ 18-19, 34.

In fact, 20 Ill. Adm. Code 701.90(a)(2) is not "operative medical policy"; rather, it is a specific section in the portion of the Illinois Administrative Code that promulgates *county jail standards* for the *Department of Corrections*. *See* 20 Ill. Adm. Code, Chapter 1 ("Department of Corrections"), Title 20 ("("Cook County Jail Standards"), Part 701 ("Cook County Jail Standards"). As such, Section 701.90 ("Medical and Mental Health Care") does *not* regulate the conduct of medical providers but rather states that *jails* must provide a "competent medical authority" to ensure that certain "medical and mental health services" delineated in subsections (a)(1) though (a)(10) are made available. 20 Ill. Adm. Code 701.90(a). While none of the services outlined in Section 701.90(a) make mention of housing determinations, Section 701.70 clarifies that the *correctional facility* determines housing assignments (included any changes) after considering a multitude of classification factors. *Compare* 20 Ill. Adm. Code 701.90 *with* 701.70.

Furthermore, the relevant "service" upon which Plaintiff bases the second prong of his conditions claim against Defendant Field ("treatment of ailments") is unrelated to any cause of action asserted against her. 20 Ill. Adm. Code 701.90(a)(2). Specifically, Plaintiff has not described any treatment that Defendant Field provided during the psychiatric evaluation, much less asserted a medical indifference claim against Defendant Field.

Therefore, Plaintiff's assertions that Defendant Field either "denied" or "refused" his tier transfer request or that she was required to direct the request to medical personnel with "appropriate authority" are frivolous allegations not brought in good faith and undermined by portions of the administrative code establishing that authority regarding detainee housing determinations lies with the CCSO/CCDOC. Therefore, Plaintiff cannot allege that it was

objectively unreasonable for Defendant Field to inform Plaintiff that she did not have such authority, which actually resulted in Plaintiff appropriately directing his request to correctional staff. *See* dkt. 44, ¶¶ 18, 20.

Finally, Plaintiff does not allege that he suffered *any* injury, much less a physical one, as a result of Defendant Field's conduct in support of his conditions claim. *See generally* Dkt. 44, Count I and ¶¶ 33-34. For this additional reason, Defendant Field must be dismissed from Count I.

**b. Plaintiff does not plead a failure to protect claim against Defendant Field.**

A failure to protect claim must state: (1) the defendant made an intentional decision about the plaintiff's confinement conditions; (2) the conditions put the plaintiff at a "substantial risk" of serious harm; (3) "[t]he defendant did not take reasonable available measures to abate that risk, *even though a reasonable officer* in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious;" and (4) the defendant's decision caused serious harm. *Kemp v. Fulton Cnty.*, 27 F.4th 491, 496 (7th Cir. 2022) (emphasis added).

Similar to his conditions claim, Plaintiff's failure to protect claim against Defendant Field is also based on her "refusal" to transfer him to another tier or to direct his request to medical personal with "appropriate authority." Dkt. 44, ¶¶38-42. For the reasons previously explained, Plaintiff has not put forth any well-pled facts that make this claim plausible, given the absence of any allegations to support the notion that Defendant Field, in fact, had any authority to transfer Plaintiff to another tier in response to his request. Without any other facts alleging liability, Plaintiff's failure to protect claim against Defendant Field cannot stand.

**c. Plaintiff does not plead a plausible *Monell* claim against Cook County.**

A governmental entity is liable for damages under Section 1983 only if the plaintiff can

show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *See Monell v. Department of Social Serv.*, 436 U.S. 658, 690-92 (1978).

While Plaintiff broadly concludes that the unconstitutional conduct described in Counts I and II "were undertaken pursuant to an official policy adopted, promulgated, and/or maintained by Defendant Sheriff Dart and Defendant Cook County," dkt. 44, ¶ 59, Plaintiff does not actually identify any relevant Cook County policy. Instead, Plaintiff simply states, "to the extent there is a policy for inmates during a criminal investigation involving suicide at Cook County Jail, such policy fails to take into consideration inmates like Plaintiff who have a long and well documented history of mental illness, suicidal ideations, and attempted suicides. To the extent there is not a policy for inmates during a criminal investigation involving suicide at Cook County Jail, the deliberate decision not to implement a policy is a deliberate policy choice." *Id.*, ¶ 60.

Plaintiff's *Monell* claim against Cook County fails for several reasons. First, Plaintiff's proposed hypothetical "policy for inmates" (or lack thereof) as well as the suggested deficiencies in said policy as to "inmates like Plaintiff" are too vague and cryptic to plausibly be the cause of Plaintiff's alleged injuries. Second, as previously noted, the Cook County Sheriff's Office and Cook County are distinct legal entities, and such a policy would inherently fall under the purview of Defendant Dart and the Cook County Sheriff's Office, rather than Cook County. *See Id.*, ¶ 61 (Plaintiff alleges that "Defendant Sheriff Dart possesses final policy-making authority over . . . Cook County Jail" and is "responsible for establishing, maintaining, and funding the policies, practices, and customs governing jail operations and the conduct of correctional personnel.") and ¶ 14 (alleging that *correctional staff* investigated the crime scene, during which time *correctional staff* also relocated Plaintiff and his tier-mates to Tier 3); *see also* 20 Ill. Admin. Code 701.10(b) ("Administration") ("A current written manual of policies and regulations for the operation of the

jail shall be established by the jail administrator and furnished to each employee. Written procedures for . . . medical emergencies including suicide prevention and crisis intervention . . . shall be a part of this manual.). Finally, Plaintiff's claims against Defendant Field (the *only* Cook County employee named in this lawsuit) have nothing to do with deficiencies in policy, much l ess a policy for *inmates*.

Because Plaintiff has not asserted any Cook County policy that resulted in any violation of Plaintiff's constitutional rights, Cook County must be dismissed from Count III.

**d. Plaintiff does not plead a plausible indemnification claim against Cook County.**

The only fact alleged by Plaintiff in support of his indemnification claim is that Cook County employed "Defendants." Dkt. 44, ¶¶ 64, 66. However, as previously explained, Cook County did not employ "Defendants" collectively. Specifically, Cook County did not employ Defendant Dart or any of the three individual correctional officer defendants. Therefore, Plaintiff's indemnification claim must be dismissed because it is not supported by any factual matter. *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023).

**III. Plaintiff's claims against the Cook County Defendants are barred by the statute of limitations.**

The statute of limitations for § 1983 claims in Illinois is two years. *See Thomas v. Dart*, No. 18 C 6527, 2020 U.S. Dist. LEXIS 242703, at *8 (N.D. Ill. Dec. 28, 2020); *see also Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016); *see also Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019). A § 1983 claim accrues "the first moment at which [the plaintiff] had a complete and present cause of action." *Savory v. Cannon*, 947 F.3d 409, 414 (7th Cir. 2020); *see also McDonough v. Smith*, 588 U.S. 109, 109, (2019).

Plaintiff's claims against the Cook County Defendants are based on the following allegations. On or about November 16 through 18, 2022, Plaintiff requested a tier transfer during

a psychiatric evaluation conducted by Defendant Field, noting that he feared he would experience a mental breakdown if he remained housed in the same tier where his tier-mate committed suicide. Dkt. 44, ¶¶ 17-18. Plaintiff claims that he in fact suffered emotional injuries while he remained housed in Tier 4 for "several weeks" after making his request. *Id*., ¶ 23.

Therefore, Plaintiff's cause of action against the Cook County Defendants accrued in the "several weeks" during which he remained housed in Tier 4 following his evaluation with Defendant Field. At the very latest, the statute of limitations on Plaintiff's 1983 claims expired by the end of 2024, at which point he would have already been allegedly experiencing emotional distress as a result of being housed in Tier 4 for "several weeks" after he made his transfer request.

However, Plaintiff did not assert any of the pending claims against the Cook County Defendants until February 18, 2026, when he filed the operative Amended Complaint in this matter more than a year after the statute of limitations expired. Specifically, Plaintiff failed to raise such claims in either of his two prior pleadings.

The first pleading – and the *only* pleading that was filed prior to the expiration of the statute of expirations – was Plaintiff's second amended complaint filed on September 30, 2024 in Case No. 23-cv-140, dkt. 51.[6] In Count I (the only count related to the issues in this case), Plaintiff sued Defendant Dart, Cook County, and correctional officer defendants, but did *not* identify Defendant Field, who was only described as "Mental Health Advisor Jane Doe." *Id*. at 14. Moreover, Plaintiff did *not* bring a conditions or failure to protect claim against Mental Health Advisor Jane Doe; instead, he brought a *failure to provide necessary medical care* claim. *Id*.

Furthermore, not only does Plaintiff fail to assert a *Monell* claim against Cook County in

[6] Previously, on February 28, 2023 and April 9, 2024, Plaintiff filed his respective original and amended complaints in Case No. 23-cv-140, both of which are unrelated to the claims asserted in this lawsuit, Case No. 25-cv-20. *See* Case No. 23-cv-140, dkts. 8 and 29.

this Count, but the *only* allegation directed at Cook County is entirely absent from Plaintiff's operative complaint and conflates the authority and employment hierarchy of Cook County with that of Defendant Dart and the Cook County Sheriff's Office. *Id*., ("[C]ook County operates an unconstitutional practice where its officers mock, belittle, and otherwise subject pretrial detainees exhibiting suicidal thoughts to ridicule and slander.").

On December 20, 2025, after dismissing Village of Matteson defendants from Count I, Judge Daniel severed Count I and granted Plaintiff leave to amend it in a new matter, which was opened as this lawsuit, Case No. 25-cv-20. Dkt. 1. However, by the time Plaintiff filed his initial complaint in Case No. 25-cv-20 on April 7, 2025, the statute of limitations had already expired over four months prior. As such, Plaintiff could not have timely-asserted any claim except the previously asserted failure to provide necessary medical care claim, which was the only claim he was granted leave to amend.

Regardless, on April 7, 2025, Plaintiff filed his initial pleading in the instant case. Dkt. 11. In that pleading, Plaintiff once again failed to name Defendant Field as a defendant. Plaintiff also did not amend his failure to provide medical care claim—which was the *only* claim that he was granted leave to amend—against *any* defendant. Dkt 1 at 7. Instead, Plaintiff asserted, for the first time, a single failure to protect claim against Mental Health Advisor Jane Doe and correctional officers.[7] Dkt. 11 at 9. As to Cook County, Plaintiff asserted, for the first time, a single indemnification count against Cook County.[8] Dkt. 11 at 14.

As such, Plaintiff's claims against the Cook County Defendants were untimely asserted. Specifically, Plaintiff's claims against Defendant Field are time-barred because she was not named

[7] In Count I, Plaintiff also asserted, for the first time, a conditions claim, but did not include Mental Health Advisor Jane Doe in that claim. Dkt. 11 at 7.

[8] In Count I, Plaintiff also asserted, for the first time, a *Monell* claim, but brought that claim solely against Defendant Dart. Dkt. 11 at 13.

as a defendant and, therefore, lacked *any* notice of the nature of the claims against her until February 18, 2026, over a year after the expiration of the statute of limitations and more than three years after the allegations directed at her occurred. Moreover, even if Defendant Field had been named in the timely-filed September 30, 2024 pleading, both the conditions and the failure to protect claims asserted against her would still be untimely as they were not included in that pleading. Moreover, Plaintiff's claims against Cook County are time-barred because they were not asserted until April 7, 2025 and February 18, 2026, respectively, long after the statute of limitations expired at the end of 2024. Moreover, Cook County lacked prior notice of the nature of the pending (untimely) claims as the *only* allegation directed at Cook County in the September 30, 2024 complaint is unrelated to the conduct alleged against Cook County (or Defendant Field) in the operative complaint.

As such, all claims against the Cook County Defendants must be dismissed with prejudice. Amendment would be futile, as Plaintiff did not timely bring any claim against Cook County or Defendant Field, who was also not timely named as a defendant in this lawsuit.

## IV. In the alternative, Defendant Field is entitled to qualified immunity.

Even if the Amended Complaint sufficiently alleged a constitutional violation (which it does not), the doctrine of qualified immunity shields Defendant Field from liability. Qualified immunity shields government officials from lawsuits unless their conduct violated a constitutional right that was "clearly established" at the time of the alleged conduct. *Pearson v. Callaham*, 555 U.S. 223, 230 (2009). Although qualified immunity is an affirmative defense, once raised, it becomes plaintiff's burden to defeat it. *Purvis v. Oest*, 614 F.3d 713, 717 (7th Cir. 2010). In determining whether a state official is entitled to qualified immunity, courts make two inquiries: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of the

constitutional right, and (2) whether the constitutional right was clearly established at the time of the alleged violation." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014). If either question is answered in the negative, Officer Rajkowski is entitled to qualified immunity. *See id.*

For the reasons already discussed, Plaintiff fails to allege that Defendant Field violated any clearly established constitutional right. The allegations against Defendant Field are limited to the fact that she informed Plaintiff, in response to his request, that she did not have the authority to reassign him to a different tier, as such authority lies with the CCSO. *See J.B.*, 997 F.3d 714 at 717; *see also* 20 Ill. Adm. Code 701. 70. The complaint is devoid of any allegation that Defendant Field did, in fact, have such authority, or that she engaged in any conduct that could have plausibly caused Plaintiff's alleged injuries. As such, Defendant Field is entitled to qualified immunity, and all claims against her should be dismissed with prejudice.

## CONCLUSION

WHEREFORE, the Cook County Defendants respectfully request that this Honorable Court enter an order dismissing all claims against him with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

EILEEN O'NEILL BURKE
State's Attorney of Cook County

By: *Jessica D. Ratner*
Jessica D. Ratner
Assistant State's Attorney
50 W. Washington Street, Suite 2760
Chicago, Illinois 60602
(312) 603-1434
Jessica.Ratner@cookcountysao.org

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on August 7, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

By: *[/s/ Jessica D. Ratner]*
Jessica D. Ratner