**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Kevin D. Sampson Jr.,<br><br>Plaintiff,<br><br>v.<br><br>Defendant Cook County Sergeant Skinner, Defendant Cook County Officer Wlodyga, Defendant Cook County Officer Franco, Defendant Cook County Officer Gomillia, Defendant Mental Health Advisor Julie L. Field, in their individual capacity, Sheriff Tom Dart, in his official capacity, and Cook County.<br><br>Defendants. | Civil Action No. 1:25-cv-00020<br><br>Honorable Judge Andrea R. Wood<br>Honorable Magistrate Judge Young B. Kim |

**PLAINTIFF'S RESPONSE TO CCSO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Kevin Sampson, Jr., ("Plaintiff" or "Mr. Sampson") by and through his counsel at Steptoe LLP, respectfully submits his Response to Defendants' Correctional Sergeant Timothy Skinner, Deputy Sheriff Paul Wlodyga, and Correctional Officer Keith Gomillia in their individual capacities, and Sheriff Thomas J. Dart, in his official capacity (collectively, the "CCSO Defendants") Motion to Dismiss. In support of his Response, Plaintiff states as follows:

**INTRODUCTION**

This case arises out of a series of traumatic and unconstitutional events that occurred while Plaintiff Kevin D. Sampson Jr. was incarcerated at Cook County Jail. Mr. Sampson has a long and well-documented history of mental illness, including suicidal ideation and multiple suicide attempts, both prior to and during his incarceration. Despite this known history, Defendants forced him to clean the scene of his friend's suicide and continue living on the same tier where the suicide occurred. Mr. Sampson made repeated requests for psychological evaluation and housing transfer, but Defendants ignored or denied those requests, further exacerbating his mental health crisis.

Defendants now move to dismiss Mr. Sampson's claims, arguing that his injuries are not compensable under the Prison Litigation Reform Act (PLRA), that he fails to plead a *Monell* claim, that Officers Skinner, Gomillia, Wlodyga, and Franco acted reasonably and are entitled to qualified immunity, and that claims against Officer Gomillia are time-barred.

First, Mr. Sampson's claims are not barred by the PLRA. He seeks nominal and punitive damages for constitutional violations, which are recoverable even in the absence of physical injury. Second, Mr. Sampson adequately pleads a *Monell* claim by alleging that his injuries resulted from either a deficient policy, a widespread practice, or a policymaker's deliberate omission. Third, he plausibly alleges that the Defendants were aware of a substantial risk to his mental health and failed to take reasonable steps to protect him and subjected him to inhumane conditions, defeating their qualified immunity defense. Fourth, dismissal of claims against Officer Gomillia is premature, because tolling doctrine (e.g., administrative exhaustion, legal disability, and equitable tolling) apply.

Mr. Sampson's First Amended Complaint presents plausible claims for relief under well-established constitutional principles. The facts alleged, taken as true, demonstrate that Defendants failed to protect Mr. Sampson and subjected him to inhumane conditions. Accordingly, Defendants' Motion to Dismiss should be denied in its entirety.

## **STANDARD OF REVIEW**

Under Rule 12(b)(6), a court must treat a plaintiff's factual allegations as true and they "are entitled to have every factual inference drawn in their favor." *Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 290–91 (7th Cir. 2018). Importantly, factual allegations do not need to prove plaintiff's claim, but only need to show that the claim is "plausible on its face" and if true, entitle the plaintiff to relief. *Kahn v. Walmart Inc.*, 107 F.4th 585, 594 (7th Cir. 2024) (citation

omitted). A complaint with such factual allegations only needs to present a "short and plain statement" of its bases. *Id.*

## ARGUMENT

### A. Plaintiff's 42 U.S.C. § 1983 Claims are Not Barred

The Seventh Circuit has long held that "[i]t would be a serious mistake to interpret section 1997e(e) to require a showing of physical injury in all prisoner civil rights suits." *Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999). Here, Defendants made that mistake by misapplying 42 U.S.C. § 1997e(e) to argue that Plaintiff's entire suit is barred.

Defendants' reliance on Section 1997e(e) to bar Plaintiff's entire suit is misplaced. The statute does not preclude constitutional claims where physical injury is absent, nor does it foreclose recovery of nominal or punitive damages. The Seventh Circuit has repeatedly affirmed that such remedies remain available to vindicate constitutional rights. *See Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999) (holding that nominal damages "are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury"); *Calhoun v. DeTella*, 319 F.3d 936, 941–42 (7th Cir. 2003) (holding that Section 1997e(e) does not bar nominal and punitive damages); *Zehner v. Trigg*, 133 F.3d 459, 462 (7th Cir. 1997). And it is clear that Plaintiff's First Amended Complaint seeks nominal and punitive damages:

3. For exemplary and punitive damages against each Defendant in an amount to be proven at trial;

4. For attorneys' fees and costs, including Plaintiff's reasonable attorneys' fees and initial filing fees; and

5. For such other and further relief as the Court deems just and proper.

ECF No. 44 ("First Amended Complaint"), at 15; *see also Calhoun*, 319 F.3d at 943 ("Although Calhoun does not specifically request nominal damages . . . a prayer for 'such other relief as it may appear plaintiff is entitled' . . . makes clear that he is seeking nominal damages."). Plaintiff's First

Amended Complaint expressly seeks these forms of relief, which are legally sufficient to sustain his claims.[1] Accordingly, Defendants' arguments fail, and Plaintiff's claims should proceed.

**B. Plaintiff's Section 1983 Claims Against Officer Gomillia Are Not Time-Barred**

Defendants' argument that Plaintiff's claims against Officer Gomillia are time-barred is premature and overlooks multiple grounds for tolling the statute of limitations.

First, under Seventh Circuit precedent, the statute of limitations for Section 1983 claims is tolled while a prisoner exhausts administrative remedies, as required by the Prison Litigation Reform Act (PLRA). *Johnson v. Rivera*, 272 F.3d 519, 521–22 (7th Cir. 2001). During a remote Zoom meeting with counsel on October 8, 2025, and subsequent meetings, Mr. Sampson disclosed that he filed a grievance related to the events described in the First Amended Complaint around mid-November 2022.[2] He has further stated that, after receiving no confirmation that the grievance was received, he submitted an Initial Officer Complaint (IOC) on February 3, 2023, to document the same concerns. *See* Ex. A. These disclosures raise a factual dispute regarding whether Mr. Sampson's grievance was lost or destroyed, an issue that cannot be resolved at the pleading stage. As in *Johnson*, where the Seventh Circuit reversed dismissal based on allegations that a grievance was destroyed, tolling is appropriate here pending further discovery. *See Johnson*, 272 F.3d at 522 (reversing the district court's dismissal of the complaint because "Johnson never completed the prison's grievance process . . . the district court . . . does not address Johnson's allegations that Officer Pellegrini destroyed his grievance.").

Second, Illinois law provides tolling for individuals under legal disability at the time the cause of action accrues. 735 ILCS 5/13-211. Mr. Sampson has pled that he was suffering from

---

[1] If further clarification of the types of damages Plaintiff seeks is needed, Plaintiff is willing to file a Second Amended Complaint which will explicitly include the requested relief of nominal damages.

[2] Plaintiff is prepared to provide a sworn declaration from Mr. Sampson or file a Second Amended Complaint if the Court finds it helpful in resolving this motion.

severe mental illness, panic attacks, and a mental breakdown following his friend's suicide, and was denied medical treatment during this period. These allegations support tolling under 735 ILCS 5/13-211, and expert evaluation of Mr. Sampson's health records is necessary to determine whether Mr. Sampson was legally disabled and unable to timely identify or sue Officer Gomillia. *See Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996).

Third, equitable tolling applies where a plaintiff, despite reasonable diligence, is unable to identify the wrongdoers. *Fidelity Nat. Title Ins. Co. of N.Y. v. Howard Sav. Bank*, 436 F.3d 836, 839 (7th Cir. 2006). Mr. Sampson has acted diligently under difficult circumstances. After his case was severed and reassigned, new counsel was appointed in February 2025 and promptly filed the original complaint in April 2025. *See* ECF Nos. 1–6, 11. Further reasonable efforts by Mr. Sampson's appointed counsel then identified previously unknown Cook County Officers, including Officer Gomillia and filed the First Amended Complaint. *See* ECF No. 44.

The Seventh Circuit has repeatedly acknowledged the unique challenges incarcerated plaintiffs face in identifying defendants. *See Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 789–90 (7th Cir. 1995); *Santiago v. Walls*, 599 F.3d 749, 763 (7th Cir. 2010). Courts have allowed equitable tolling in similar cases where plaintiffs could not identify defendants without discovery. *See Donald v. Cook Cnty. Sheriff's Dept.*, 95 F.3d 548, 562 (7th Cir. 1996). This Court should do the same here.

In light of these tolling doctrines and the factual disputes surrounding Mr. Sampson's efforts to exhaust remedies and identify Officer Gomillia, dismissal on statute of limitations grounds is inappropriate.

### C. Plaintiff Meets His Burden to Plead a *Monell* Claim

Defendants misapply the pleading standard and ignore key facts. Here, Plaintiff meets the *Monell* standard by alleging that his constitutional injury resulted from either: (1) an express policy, (2) a widespread practice, or (3) a policymaker's deliberate omission. *Arquero v. Dart*, 587

F. Supp. 3d 721, 728 (N.D. Ill. 2022). Defendants incorrectly argue that Plaintiff must identify an express CCSO policy under the first *Monell* prong. *See* ECF No. 112, at 9. There is no legal requirement to plead with such specificity. At the pleading stage, Plaintiff need only allege a plausible claim, not prove a widespread practice or identify an express policy. *Ohlrich v. Vill. of Wonder Lake*, 22 F. Supp. 3d 874, 878 (N.D. Ill. 2014) ("The Seventh Circuit has routinely held that *Monell* claims are not subject to heighted pleading standards.").

Further, Plaintiff is not solely bringing his claim under the first prong of *Monell* as Defendants allege. Instead, Plaintiff is asserting a *Monell* claim under any of the three prongs pending further discovery. *See* First Am. Compl. ¶¶ 58–61. Plaintiff alleges that CCSO failed to implement policies addressing the treatment of mentally ill inmates during suicide investigations, or alternatively, that existing policies were deliberately indifferent to such inmates. *See* First Am. Compl., ¶¶ 59–60. He also alleges that correctional officers forced him and others to clean up a suicide scene, which is an act plausibly tied to a broader custom, especially given the jail's large mentally ill population and the prevalence of inmate suicides. *See id.*; *see also* Samantha Michaels, *Chicago's Jail is One of the Country's Biggest Mental Health Care Providers. Here's A Look Inside*, MOTHER JONES (Jan. 8, 2019), https://www.motherjones.com/criminal-justice/2019/01/chicagos-jail-is-the-one-of-the-countys-biggest-mental-health-care-providers-heres-a-look-inside/; E. Ann Carson, Ph.D., BUREAU OF JUST. STAT., *Mortality in Local Jails, 2000-2019 – Statistical Tables* (2021), https://bjs.ojp.gov/content/pub/pdf/mlj0019st.pdf (last visited Aug. 27, 2026); *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

While Defendants argue Plaintiff failed to allege facts showing that CCSO had notice of multiple instances of alleged unconstitutional conduct caused by its policy gap, Plaintiff alleges it affected multiple inmates and intends to explore further instances in discovery. At the pleading stage, Mr. Sampson need not prove a widespread practice but only plausibly allege one. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Gill*, 850 F.3d at 344.

### D. Plaintiff Adequately Pleads His Section 1983 Claims Against Officers Skinner, Wlodyga, Gomillia, and Franco

Defendants incorrectly argue that Plaintiff's Section 1983 claims fail as a matter of law for three reasons: (1) Plaintiff did not allege facts that would allow a reasonable person to infer that he was at a substantial risk of suffering an objectively serious harm as he never communicated that he was planning to commit suicide or hurt himself; (2) Plaintiff did not allege Officers Wlodyga, Skinner, Gomillia, and Franco's conduct caused any objectively serious harm; and (3) Officers' Wlodyga, Skinner, Gomillia and Franco's actions were objectively reasonable under the circumstances. ECF No. 112, at 10–11. Plaintiff addresses each argument in turn.

First, Plaintiff adequately pled that he was at substantial risk of suffering serious harm and alleged facts that would allow a reasonable person to infer that he was at a substantial risk of suffering serious harm. Plaintiff need not show the Defendants were aware of or provide suspected facts showing a strong likelihood of harm, but instead that the Defendants "did not take reasonable available measures to abate the risk of serious harm . . . even though *reasonable officers under the circumstances would have understood the high degree of risk involved*[.]" *Pittman, by and through Hamilton v. Madison Cnty., Ill.*, 108 F.4th 561, 572 (7th Cir. 2024). Plaintiff pled that he has a history of mental health issues and Defendants Skinner, Wlodgya, Gomillia, and Franco were responsible for recognizing Plaintiff's history of mental illness, suicidal ideation, and prior suicide attempts. Even if they claim ignorance, Plaintiff alleges he explicitly informed Franco, Skinner, and Wlodyga of his deteriorating mental state following the suicide of his friend and further requested a transfer and additional psychological evaluations due to his history of mental illness, suicidal ideation, and suicide attempts. *See* First Am. Compl., ¶¶ 15, 20–21, 31 43–44, 49–50. A reasonable officer would have understood that both their action and inaction—ignoring requests for help, forcing him to remain in a traumatic environment, and denying further evaluation—made the consequences of harm obvious.

Second, Plaintiff did in fact allege that Officers Wlodyga, Skinner, Gomillia, and Franco's conduct caused objectively serious harm. In his First Amended Complaint, Plaintiff plausibly pled that Officers Wlodyga, Skinner, Gomillia, and Francos conduct caused objectively serious harm––pain, suffering, emotional distress, and injury—from being incarcerated under conditions posing a substantial risk to self-harm, being forced to live in the same tier his friend had recently committed suicide, and cleaning the shower area with clothing, bodily fluids, and other remnants of his friend's suicide. First Am. Comp., ¶¶ 29–30, 32, 46, 52, 54, 56–57.

Third, Plaintiff has sufficiently pled that Officers' Wlodyga, Skinner, Gomillia, and Franco's actions were not objectively reasonable under the circumstances. Contrary to Defendants' arguments, it is not unreasonable to assert that Officer Gomillia had knowledge or should have had knowledge of Plaintiff's mental health history. To prevail on a Fourteenth Amendment Due Process claim, "a pretrial detainee in a medical case need not prove a defendant's subjective awareness," instead a pretrial detainee may prevail by providing only objective evidence. *Pittman*, 108 F.4th at 570. Plaintiff has prior suicide attempts while incarcerated and as stated in his February 3, 2023, Officer complaint, Plaintiff takes psychological medication which makes it objectively reasonable to infer the Defendants had knowledge of Plaintiff's mental health history. Ex. A.

Additionally, it was not objectively reasonable under the circumstances for Officer Gomillia to require Plaintiff and other detainees to clean up the shower area where his friend committed suicide. Courts have held "[u]nder certain factual circumstances—*i.e.* confinement, even for a short period of time, in the presence of human waste or blood—unhygienic conditions and lack of access to cleaning supplies has constituted the basis of a conditions-of-confinement claim." *Murithi v. Hardi*, No. 13 C 00599, 2016 WL 890695, at *7 (N.D. Ill. Mar. 9, 2016). Defendants' argument that requiring Plaintiff to clean up after his friend's suicide met the legitimate government interest of maintaining a clean tier is improper. In fact, the Defendants' use

of case law explaining that the need for "policies and practices" within jails to support its argument that Defendants had a legitimate government interest to maintain a clean tier goes directly to Plaintiff's *Monell* claims he seeks to prove through further discovery. *Johnson v. Dart*, No. 20-cv-06500, 2025 WL 964962, at *7 (N.D. Ill. Mar. 31, 2025).

Further, Officer Wlodyga, Franco, and Skinner's responses to Plaintiff's requests following the traumatic event of his friend's suicide were not objectively reasonable. Defendants' reliance on *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.* which states a "mere request to see a psychiatric counselor does not, *standing alone*, put a prison officer on notice of imminent possibility of suicide" is inadequate to show Defendants acted reasonably. 746 F.3d 766, 777 (7th Cir. 2014). Rather, the Seventh Circuit has held that non-medical defendants cannot simply ignore an inmate's request. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). Here, Mr. Sampson, who has a history of mental health issues, had just witnessed the scene of his friend's suicide, and in the case of his ignored request to Officer Wlodyga, had just returned from Cermak Hospital for a psychological evaluation. First Am. Compl., ¶¶ 11, 15, 21. Those facts, notwithstanding Officer Franco mocking Plaintiff's request (telling him to "hang around"), provided Defendants notice beyond simply requesting a psychological evaluation and drawing every factual inference in favor of the Plaintiff is enough to show that the claim is plausible. *Kahn*, 107 F.4th at 594.

Defendants' similarly misinterpret Plaintiff's claims against Sergeant Skinner. Plaintiff is alleging that in addition to refusing his request to be transferred to a different tier, Sergeant Skinner also threatened to send Plaintiff to solitary confinement despite knowing that Plaintiff was experiencing a mental breakdown. First Am. Comp., ¶ 20. Sergeant Skinner's actions amount to punishment which the Supreme Court held violates a pretrial detainee's Fourteenth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) ("[P]retrial detainees (unlike convicted prisoners) cannot be punished at all[.]")

Thus, the Court should deny Defendants' Motion and find that Plaintiff's Section 1983 claims do not fail as a matter of law.

### E. Mr. Sampson Has Plausibly Pled That His Particularized Constitutional Right was Violated, Therefore Qualified Immunity is Inapplicable

Defendants Skinner, Wlodyga, and Gomillia are not entitled to qualified immunity because Mr. Sampson has alleged a violation of a clearly established constitutional right: the right to be free from deliberate indifference to serious mental health needs, including suicide risk. The Fourteenth Amendment "affords broader protection than the Eighth Amendment's protection against only punishment that is 'cruel and unusual'", in that it protects pre-trial detainees from all "punishment," which includes the failure to respond reasonably to known risks of self-harm. *Lewis v. Downey*, 581 F.3d 467, 473–74 (7th Cir. 2009) (citations omitted).

Defendants argue that Mr. Sampson must identify a case holding that an inmate in his exact circumstances: 1) having a history of mental illness and suicidal ideation and recently being returned to the tier had a clearly established right to be moved immediately; 2) requesting further psychological evaluation on a tier where someone committed suicide had a clearly established right to be immediately seen by medical personnel; and 3) having a clearly established right not to be forced to clean up an area where someone committed suicide. This framing misstates the law. Courts have made clear that the right to be free from objectively unreasonable conduct that fails to abate the risk of serious harm to a detainee need not be defined with such narrow specificity. *Hall v. Ryan*, 957 F.2d 402, 406 (7th Cir. 1992); *Gatz v. City of Chicago*, No. 25 CV 8864, 2026 WL 1718321, at *3 (N.D. Ill. June 15, 2026).

Mr. Sampson alleges that he informed both Sergeant Skinner and Officer Wlodyga of his deteriorating mental state and requested medical evaluation and a housing transfer. Defendant Skinner responded with threats of solitary confinement, and Defendant Wlodyga ignored his request entirely. Additionally, Mr. Sampson alleges that Officer Gomillia was aware or should

have been aware of his long struggle with mental illness before he failed to conduct his required observation of Tier 4 for several hours and later made Mr. Sampson clean up the scene of the suicide. These facts taken as true, support the inference that Sergeant Skinner and Officers Gomillia and Wlodyga would have understood the high risk involved and failed to take reasonable steps to mitigate it. At the pleading stage, this is sufficient to overcome qualified immunity. *Sanville v. McCaughtry*, 266 F.3d 724, 738 (7th Cir. 2001).

Qualified immunity does not protect officials who ignore obvious risks to inmate safety, especially when the right at issue (i.e., protection from deliberate indifference to suicide risk), is clearly established. Mr. Sampson's allegations fall squarely in this framework, and Defendants' motion should be denied.

**F. Any Punitive Damages Claims Against Officers Skinner, Wlodyga, and Gomillia Should Not Be Dismissed**

The Court should not dismiss any claims related to punitive damages at this stage as Plaintiff has pled numerous facts, if taken as true, can be used to infer that Defendants' conduct was "motivated by evil intent or callous indifference to [] federally-protected rights of plaintiffs." *Stachniak v. Hayes*, 989 F.2d 914, 928 (7th Cir. 1993). Plaintiff has pled that Officer Skinner threatened him with solitary confinement for requesting to transfer tiers during a mental health breakdown, Officer Wlodyga simply ignored his request for a psychological evaluation, and Officer Gomillia required him along with other inmates to clean up the remnants of his friends suicide. First Am. Compl. ¶¶ 16, 20, 21. It is premature to dismiss claims seeking punitive damages.

## CONCLUSION

WHEREFORE, Plaintiff Kevin Sampson Jr. requests that CCSO Defendants' Motion to Dismiss be DENIED. However, should the Court conclude that any claim has not been adequately

pled, Plaintiff respectfully requests leave to file a Second Amended Complaint to address any deficiencies identified by the Court.

Dated: August 28, 2026

Respectfully submitted,

By: *<u>/s/ Anthony G. Hopp</u>*
Anthony G. Hopp (IL 6199290)
Matthew O'Boyle (IL 6353662)
**STEPTOE LLP**
227 West Monroe Street
Suite 4700
Chicago, IL 60606
Phone: (312) 577-1300
Email: ahopp@steptoe.com
Email: moboyle@steptoe.com

*Appointed Counsel for Plaintiff Kevin Sampson Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2026, I cause the forgoing **PLAINTIFF'S RESPONSE TO CCSO DEFENDANTS' MOTION TO DISMISS** to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Anothony G. Hopp*
Anthony G. Hopp